James G. TRUMP, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 534, 1998.

Supreme Court of Delaware.

Submitted: Dec. 15, 1999.
Decided: June 9, 2000.

Raymond J. Otlowski, Public Defender's Office, Wilmington, Delaware, for appellant.

John R. Williams, Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, Chief Justice, HOLLAND and HARTNETT, Justices.

VEASEY, Chief Justice.

The principal question before the Court is whether statements in a prosecutor's jury summation that appeared to vouch for the credibility of a complaining child witness in a criminal sexual misconduct case constituted plain error requiring reversal of the conviction and sentence. We hold that for improper vouching to constitute plain error: (1) credibility must be a central issue in a close case; and (2) the prosecutor's comments must be so clear and defense counsel's failure to object so inexcusable that a trial judge, in the interest of fundamental fairness, has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction. This is not such a case. Therefore, we find no plain error.

Even in the absence of objection by defense counsel, prosecutors must recognize that vouching is unprofessional, that they speak as representatives of the State,

and that they may risk reversal if they state or clearly imply to a jury in a criminal case that they personally believe the testimony of any witness. This risk is particularly acute where the credibility of a crucial prosecuting witness is in serious question. Nevertheless, to provide effective assistance to the defendant, defense counsel in such cases must be alert to avoid waiver and should weigh more heavily the wisdom of objecting than a tactical decision to remain silent. Finally, we cannot expect trial judges to act *sua sponte* unless the vouching is clear and there is plainly no arguable tactical reason or other basis for defense counsel to withhold objection in the circumstances.

Defendant also contends on appeal that it was plain error for the trial court to admit in evidence prior uncharged bad acts allegedly committed by the defendant on this complaining child witness. Notwithstanding defense counsel's conscious decision not to object, the trial court conducted a proper analysis under our jurisprudence, and its exercise of discretion to admit the evidence was not plain error.

These and other grounds asserted by defendant for reversal are insufficient. Accordingly, the judgment of the Superior Court is **AFFIRMED.**

### *Facts*

Defendant James Trump, an adult, was convicted of fifteen counts of unlawful sexual intercourse in the first degree. These acts were with Dalya Jones, the minor daughter of Susan Jones, after Trump moved into Jones' apartment.[1] According to Dalya's testimony, she was nine years old when these acts began and they continued in various forms from time to time until she was fifteen. A co-worker of Trump's, Ronald Lyons, testified that Trump admitted to him that Trump had sexual relations with Dalya at Jones' home. Lyons claimed that the defendant told him

that Dalya was "sneaking into his room" at night to have sex. At trial, Trump took the stand in his own defense and denied having sexual relations with Dalya. He also denied admitting to Lyons that he had engaged in sexual relations with Dalya.

The evidence indicated that Dalya met Trump in 1990 two weeks after her ninth birthday when Trump moved into Susan Jones' apartment. Dalya testified that within three or four weeks after Trump moved in, he began having oral sex with her. Trump told Dalya not to tell her mother what was happening.

Trump resided with Jones and Dalya off and on until July 1996. During that six year period, Trump was imprisoned on other charges at the Delaware Correctional Center from August of 1991 to January 1993, and he was at the Morris Correctional Center on Level IV work release confinement from January 1993 to January 1994. After serving this time, he returned to Jones' apartment and the oral sex with Dalya resumed. After Dalya turned twelve, Trump also began having vaginal intercourse with her on a continuing basis.

When she was thirteen, Dalya told her mother what was happening. She later recanted her accusations, however, when Trump bought her a stereo and bedroom furniture. Dalya testified at trial that the sexual relations with Trump continued until she was fifteen years old. After Trump left the apartment for good in July 1996, Dalya again told her mother what had occurred and the police were notified.

At trial, Dalya's testimony was somewhat imprecise and she was subjected to impeachment through cross-examination. Her testimony was not corroborated by medical evidence. The State's case was corroborated, however, by Lyons' testimony that Trump had admitted to Lyons that he had sexual relations with Dalya. Trump denied Dalya's accusations and

1. We have used pseudonyms for the child and the mother to protect the underage victim's true identity. *See* Supr.Ct.R. 7(d).

Lyons' testimony. Thus, her credibility was seriously in issue.

Nevertheless, the jury convicted Trump of fifteen of twenty-four counts of unlawful intercourse in the first degree and acquitted him on the remaining nine counts. The trial court denied a motion for judgment of acquittal. The defendant was sentenced to prison and appeals from that sentence.

### Improper Vouching

■ It is against this background that the prosecutor's summation focused on the testimonial contradictions and the critical credibility issues. On appeal, Trump challenges several statements of the Deputy Attorney General in summation to the jury as bearing on the issue of improper vouching. We believe it is necessary to discuss only the following statements because they come closer to improper vouching than the other statements challenged by the defendant.

> Did she freely admit to you [the jury], yes, that happened, and I didn't have the courage to follow through?

> She may not have put it in those words, but *I submit to you* that that is what she's trying to tell you.

> \*　　\*　　\*　　\*　　\*　　\*

> You [the jury] took what [Dalya Jones] said to you and you said, you know, *I submit to you, I think she's telling me the truth....*

> But, ladies and gentlemen, when you heard from [a defense witness] and you heard about his corroboration, that *I submit to you* is the seal .... that puts

you far beyond the reasonable doubt standard....

(emphasis supplied).

There was no objection to these statements by defense counsel, and the trial judge did not *sua sponte* stop the prosecutor, declare a mistrial or issue a curative instruction to the jury. On appeal, Trump contends that these statements by the prosecutor were improper vouching and that it was plain error for the trial judge to allow them.

On February 16, 2000, after the oral argument in the matter currently before us, this Court decided the case of *Miller v. State*,[2] reversing a judgment of the Superior Court on several grounds including improper vouching in the prosecutor's closing argument. On April 14, 2000, we denied reargument in the *Miller* case.[3]

In *Miller*, however, the vouching was a clearer violation than that presented here. Moreover, of critical importance, there was a defense objection in *Miller*, so the plain error analysis presented here was not implicated. Because Trump failed to object at trial to any of the statements he now contends to be improper vouching, this Court will apply the "plain error" standard of review in evaluating these statements.[4]

As we noted in *Miller*, improper vouching by a prosecutor for the credibility of a witness implies that the prosecutor has superior knowledge that the witness has testified truthfully "beyond that logically inferred from the evidence."[5] In *Miller*, the prosecutor improperly vouched for the credibility of a police officer by noting that he was "a sworn officer of the law." The prosecutor went on to state the following, which we found to be clearly improper:

2. *Miller v. State*, Del.Supr., No. 434, 1998, 2000 WL 313484, Hartnett, J. (Feb. 16, 2000) (ORDER), *reh'g denied* (April 14, 2000) (ORDER).

3. The Court held the decision in the *Trump* case in abeyance pending the final outcome of the *Miller* case.

4. *See Mason v. State*, Del.Supr., 658 A.2d 994, 996 (1995); *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1356 (1991).

5. *Miller*, 2000 WL 313484, at *4 ¶ 12 (quoting *Saunders v. State*, Del.Supr., 602 A.2d 623, 624 (1984)).

You think this man does not have a conscience? You think that this man will come in here, put his hand on the Bible, tell you something that was a lie in order to convict someone who is innocent? A man who has dedicated his life to enforcing the law, and in the process of doing that, when someone tells him something about an incident, reluctantly so, but tells him something about an incident, is he going to come in here and lie to you in some effort to point the finger at the wrong person? [6]

We emphasized in *Miller* the important role of the prosecutor: "The vouching by the prosecutor as to the credibility of a witness for the State is a special concern because jurors may easily interpret vouching by the prosecutor as an official endorsement of the witness and in doing so, overlook important aspects of the witness' credibility." [7]

As we stated in our 1987 decision in *Brokenbrough*, prosecutors occupy a unique role in the adversary system because their "duty is to seek justice, not merely convictions." [8] They "represent[ ] all the people, including the defendant." [9] Therefore, they have the dual obligations of presenting the State's case "with earnestness and vigor" and the equal "duty to see that justice be done by giving defendant a fair and impartial trial." [10] Also, in *Brokenbrough* we approved the American Bar Association's Standards relating to the prosecution and defense functions, including the standard relating to argument to the jury.[11] That Standard currently states: "The prosecutor should not express his or her personal belief or opinion

as to the truth or falsity of any testimony or evidence or the guilt of the defendant." [12]

The unique role of the prosecutor and the public respect for that office have been recognized in Delaware and elsewhere. That role is critically important on the issue of improper vouching. As Justice Clifford of the Maine Supreme Judicial Court recently observed:

> Because the prosecutors are "cloaked with the authority of the State," they must choose their words in a closing argument with great care. Statements that a defendant is a "liar," or is "guilty," or that a State's witness is "truthful," without directly connecting those statements to evidence before the jury, are likely to be characterized by an appellate court as personal opinion.[13]

At the same time, it is well-recognized that defense objections to improper vouching may be waived and that appellate courts should not place on trial judges too high a burden to intervene.

> Review of allegations of prosecutorial misconduct in closing argument is a difficult task for an appellate court. The appellate court is removed from the circumstances of the trial and must assess the closing argument based on the choice of words actually used by the prosecutor, without the benefit of the "feel" for the trial gained only through presence at the trial.... Moreover, when a defendant does not object to language used in a closing argument, the appellate court can easily assume that the defendant is satisfied that there is

**6.** *Id.* at ¶ 13.

**7.** *Id.* at ¶ 12.

**8.** *Brokenbrough v. State,* 522 A.2d 851, 855 (1987) (quoting *Sexton v. State,* Del.Supr., 397 A.2d 540, 544 (1979)).

**9.** *Bennett v. State,* Del.Supr., 164 A.2d 442, 446 (1960).

**10.** *Id.*

**11.** *See Brokenbrough,* 522 A.2d at 855; *Sexton,* 397 A.2d at 544 n. 1.

**12.** ABA Standards for Criminal Justice § 3–5.8(b) (3d ed.1993).

**13.** Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing Argument,* 51 Maine L.Rev. 242, 247 (1999) (footnotes omitted).

no prejudice because inaction on the part of the defense counsel may lead to a conclusion by the appellate court that the attorney made a tactical decision to waive objection. Moreover, when the trial court, closer to the scene of the trial and with the benefit of the "feel" for the trial, does not intervene to declare a mistrial or give a curative instruction, a deferential appellate court is reluctant to vacate a conviction that is supported by substantial evidence.[14]

All Delaware lawyers are bound by the Delaware Lawyers' Rules of Professional Conduct to refrain at trial from expressing a personal opinion on the credibility of a witness.[15] This is because "[t]he cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own."[16] This is particularly applicable to the responsibilities of prosecutors.

In the case before us on this appeal, the prosecutor's comments were repeatedly couched in the phrase, "I submit to you." This phrase expresses the representation of the prosecutor as to the verity of what follows: (1) the prosecutor's representation of what the complainant was "trying to tell you"; (2) that "You [the jury] took what [Dalya] said to you and you said, you know, I submit to you, I think she's telling me the truth"; and (3) that Ryan's "corroboration ... is the seal .... that puts you far beyond the reasonable doubt standard."

These words are inartfully expressed, cryptic and blurred. Yet, had there been an objection, these phrases should have been found to be improper vouching. It is a well-established principle "that the prosecutor has a special obligation to avoid 'improper suggestions, insinuations, and, especially, assertions of personal knowledge.'"[17] It must be remembered that "[i]n a closing argument, the use of the word 'I' only serves to emphasize for the jury that the prosecutor, *i.e.*, the speaker, personally believes the point that is being submitted to the jury for its consideration."[18]

We have not adopted a rule that provides that the use of the word "I" or "we" in closing argument is per se improper. Nevertheless, we emphasized in *Brokenbrough* that "arguments in the first person are extremely dangerous and should be assiduously avoided."[19] In that case, we directed that "[i]n the future, in the event that there is a contradiction in testimony, the universally accepted and proper form of comment on those contradictions should be used."[20] That "universally accepted" form means using some version of the formulation, "the evidence shows," rather than "I submit" or "I believe."

In evaluating whether improper prosecutorial remarks have prejudiced the substantial rights of an accused, this Court analyzes three factors: "the closeness of the case, the centrality of the issue affected by the [alleged] error, and the steps taken to mitigate the effects of the er-

**14.** *Id.* at 257–58.

**15.** *See* Rule 3.4(e), Delaware Lawyers' Rules of Professional Conduct.

**16.** *Miller*, 2000 WL 313484, at *4 ¶ 14 (quoting the commentary to the ABA Standards Relating to the Prosecution Function and the Defense Function, *as quoted in Brokenbrough*, 522 A.2d at 859); *accord* ABA Standards for Criminal Justice, *supra* note 12, at § 3–5.8 commentary (reflecting the current publication of that principle) (available on Westlaw).

**17.** *United States v. Roberts*, 9th Cir., 618 F.2d 530, 533 (1980) (quoting *Berger v. United*

*States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (original punctuation used)).

**18.** *Brokenbrough*, 522 A.2d at 859.

**19.** *Id.* at 859. We observed that statements such as "I leave it to you whether this evidence does not suggest ..." are acceptable because "[t]here is a great difference in 'leaving' a point before the jury and 'suggesting' it personally." *Id.*

**20.** *Id.*

ror." [21] Furthermore, our analysis includes a review of both the statements individually and their cumulative impact.[22] Credibility was the central issue in this case, as the State admits. Therefore, the closeness of the case is intimately related to any prejudicial effects caused by improper prosecutorial statements that affect how the jury might evaluate the witness' credibility. The trial court took no affirmative steps to mitigate the effects of the alleged errors, except indirectly through a curative instruction to a different defense objection during the prosecutor's closing statement and separately through the standard jury instruction.[23]

■ We have reached a critical juncture in our jurisprudence about how to address the problem of prosecutorial misconduct in closing statements. This decision marks the second time in recent months that this Court has had to deal with a conviction involving such prosecutorial misconduct in closing arguments.[24] Despite our repeated admonitions over the past two decades,[25] prosecutors apparently have failed consistently to heed these admonitions.[26] Prosecutors must resist the urge to win at all costs and instead must be especially careful to let the evidence speak for itself and "to choose their words in a closing argument with great care." [27] This care and responsibility are necessary not only for the reason that the prosecutor's responsibility is to see that justice is done,[28] but also to avoid the costs, delays and risks to society occasioned by unnecessary reversals of convictions that otherwise would have been upheld.

■ The defense bar is not free from fault. Despite separate admonitions by

21. *Hughes v. State,* Del.Supr., 437 A.2d 559, 571 (1981) (brackets in original) (quoting *Dyson v. United States,* D.C.App., 418 A.2d 127, 132 (1980)).

22. *See Mason v. State,* Del.Supr., 658 A.2d 994, 999 (1995).

23. The defense objected to the prosecution's statement that Trump had admitted being in a specific work release program in 1994 when the defense claimed that Trump said something different. The judge acknowledged that "where the attorney has possibly made a mistake of facts, then there's the duty to correct it." Because the prosecutor said he believed that his statement was accurate, the court simply instructed the jury that regardless of what they hear from the attorneys in closing arguments, "in the final analysis, it's your collective recollection ... as jurors of what the testimony was that's going to control in this case. So to the extent your recollection may disagree with anything said ... by the attorneys, your recollection will control." The defense had also objected at side bar to the prosecution's characterization of some of Trump's testimony as "lies." The court told the prosecution that "the Supreme Court has expressed disapproval of the word lie in court, liar. It does not infrequently happen in this court, but I will instruct you henceforth not to use the word lie or liar, but some other term." Nonetheless, the court's curative instruction above did not directly address the issue presented here.

24. *See Miller,* 2000 WL 313484.

25. *See, e.g., Sexton,* 397 A.2d 540; *Hooks v. State,* Del.Supr., 416 A.2d 189 (1980); *Hughes,* 437 A.2d 559; *Brokenbrough,* 522 A.2d 851; *Mason,* 658 A.2d 994.

26. *See Brokenbrough,* 522 A.2d at 864 (noting that "[a] repetition of the same type or category of errors adversely affects the integrity of the judicial process"). We warned in *Brokenbrough* that "[r]epetition of the same type of errors by prosecutors in closing arguments, despite repeated reported admonitions[,] can only be construed as either intentional misconduct or [as conduct that is] careless and unprofessional." *Id.* at 863. We expressed hope there that "our criticism here will not fall on deaf ears and that judicial admonition, even in the absence of reversal, will encourage the curtailment of the type of improper closing arguments we have been repeatedly called upon to review." *Id.* at 864.

27. Clifford, *supra* note 13, at 247.

28. *See* Comment to Rule 3.8, Delaware Lawyers' Rules of Professional Conduct ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence.").

this Court,[29] some members of the defense bar still fail to assert timely objections to such prosecutorial misconduct. Such failures hinder the trial judge's ability to address the alleged misconduct during the trial and ultimately limit a defendant's chance of succeeding on appeal because counsel's failure to object leaves this Court with the more restricted plain error standard of review. To provide effective assistance to the defendant, defense counsel in such cases must be alert to avoid waiver and should weigh more heavily the wisdom of objecting than a tactical decision to remain silent.

Here, the judgment of the trial court stands only because the language of the prosecutor was too cryptic and garbled to be a clear signal of improper vouching, and defense counsel's failure to object may have been the result of a conscious—though dubious—tactical decision. We express the hope that prosecutors, defense counsel and trial judges [30] will be increasingly vigilant to improper closing arguments involving vouching and other problematic issues.[31]

29. *See, e.g., Mason,* 658 A.2d at 999 ("[W]e admonish the defense bar to be vigilant in asserting objections to perceived prosecutorial misconduct and inadmissible evidence.").

30. As we have stated previously, a trial judge may be obliged to step in even if the attorneys do not object. *See Holtzman v. State,* Del. Supr., No. 221, 1997, 1998 WL 666722, at *9 ¶ 23 (July 27, 1998) (ORDER) ("[T]he United States Supreme Court and this Court have previously said that the trial judge should act to control the conduct of the attorneys, and at times act *sua sponte* even without objection.") (citing *United States v. Young,* 470 U.S. 1, 10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) and *Brokenbrough v. State,* 522 A.2d at 863 ("In *Hooks, Bailey,* and *Hughes,* we have held that the trial judge must control the conduct of the court's officers and the trial judge should act at times even without an objection.")).

31. Note that in *Miller,* the judgment of the Superior Court was reversed on the ground of improper comment on the accused's right to remain silent as well as improper vouching. *See Miller,* 2000 WL 313484, at *5.

## Challenge to the Admission of Evidence of Prior Uncharged Sexual Acts Against the Complainant

■ Trump contends that the testimony of the prior uncharged acts, specifically that he engaged in oral sex with the complainant from 1990–91, was not necessary to the prosecution's case and was prejudicial to him. The State responds that the testimony was properly admitted because it showed both Trump's opportunity and intent to commit the crimes and that the earlier acts were "inextricably intertwined" with the later crimes.[32] We conclude that the trial court did not commit plain error by admitting the evidence under Delaware Rules of Evidence (D.R.E.) 404(b).

■ Usually, when the defense has made a proper objection to the admission of evidence under D.R.E. 404(b), this Court reviews the trial court's decision for abuse of discretion.[33] Here, however, Trump's counsel initially objected at trial to the court's decision to admit the evidence, but then rescinded the objection.[34] The recission of the objection means that Trump failed properly to raise and pre-

32. *See Pope v. State,* Del.Supr., 632 A.2d 73, 75–77 (1993).

33. *See id.* at 79.

34. Counsel for Trump first objected to the introduction of any uncharged conduct. Immediately after hearing the prosecution's argument as to why he needed to introduce evidence of the uncharged acts, defense counsel stated, "I don't know about motive, but if Mr. Pedersen is going to ... need that as his background of testimony then I have no objection." The Court then responded that "[e]ven though the defense has no objection, I think a record should be made anyway." The court then proceeded to perform a complete analysis of the factors from *Getz v. State,* Del.Supr., 538 A.2d 726 (1988), and *Deshields v. State,* Del.Supr., 706 A.2d 502 (1998), which included conclusions that the evidence would help establish motive and intent. The defense did not object.

serve his objection. Consequently, this Court applies the narrower, plain error standard of review.[35] Pursuant to the plain error standard,

> the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.... Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly shows manifest injustice.[36]

D.R.E. 404(b) provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

In *Getz v. State*,[37] this Court announced six principles to guide trial judges when determining whether and how to admit evidence under D.R.E. 404(b): (1) the evidence "must be material to an issue ... in the case"; (2) the evidence "must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition"; (3) evidence of the other acts "must be proved by ... clear and conclusive" evidence; (4) the other acts cannot be "too remote in time"; (5) the court needs to "balance the probative value of such evidence against its" potential for prejudice (*i.e.*, a D.R.E. 403 analysis); and (6) the

court must instruct the jury about the reason the evidence was admitted.[38] Here, the trial court specifically followed the criteria from *Getz* and satisfied each requirement.

This Court also has established nine factors to consider when a trial court applies the balancing test of D.R.E. 403 (the fifth factor of *Getz*) in deciding whether to admit evidence under D.R.E. 404(b).[39] The judge should consider (1) "the extent to which the point to be proved is disputed," (2) "the adequacy of proof of the prior conduct," (3) "the probative force of the evidence," (4) "the proponent's need for the evidence," (5) "the availability of less prejudicial proof," (6) the extent of the prejudice associated with the evidence, (7) the similarity between the charged offense and the prior activity, (8) "the effectiveness of limiting instructions," and (9) whether the prior act evidence would significantly prolong the trial.[40] The Superior Court found that the evidence satisfied these criteria.

Trump's only specific objections, raised for the first time on appeal, are that the prosecution could have presented its case without the evidence of prior sexual acts and that since those acts occurred at least a year before the charged acts, they were too remote (*i.e.*, factor 4 from *Getz*) to overcome the D.R.E. 403 analysis. These assertions fail to show that the trial court committed plain error.

In *Vanderhoff v. State*, we held that it was appropriate for the purpose of showing intent and absence of mistake by the defendant for the trial court to allow the prosecution to present evidence that the defendant committed other improper sexual acts with the victim four years before he allegedly committed the sexual assault for

**35.** *See Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986), *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

**36.** *See id.* at 1100 (internal citations omitted), *quoted in, e.g., Mason*, 658 A.2d at 996, and *Robertson*, 596 A.2d at 1356.

**37.** Del.Supr., 538 A.2d 726, 734 (1988).

**38.** *Id.* at 734 (internal citations omitted).

**39.** *See Deshields*, 706 A.2d at 506–07.

**40.** *Id.*

which he was being charged.[41] Since the Superior Court applied the *Getz* criteria, part of which included the balancing test from D.R.E. 403, this Court affirmed the defendant's conviction.

■ Here, the prosecution introduced the evidence of the prior sexual acts to show both intent and a plan by Trump to abuse the complainant while her mother was asleep or away from home. The evidence was material to show whether Trump committed the presently charged crimes because it involved a similar activity being forced upon the complainant. Although the prior acts occurred eight years before the charges in this matter were filed, evidence presented within ten years is considered relevant under D.R.E. 404(b).[42] Consequently, Trump has failed to prove that the trial court committed plain error in its decision to admit evidence of the uncharged sexual assaults under D.R.E. 404(b).[43]

### Allowing the State to Cross-Examine Trump About His Statement to Police that He Intended to Lie in an Unrelated Family Court Hearing

■ Trump argues that the State should not have been allowed to cross-examine him about statements he made to the police regarding his intention to tell the Family Court that he was the natural father of a child despite knowing that he was not the father. Trump asserts that this matter is irrelevant to the sexual assault charges against him and has no bearing on his credibility. The trial court concluded that the testimony was relevant for impeachment purposes. We agree.

"The credibility of a witness may be attacked by any party, including the party calling" the witness.[44] D.R.E. 608(b) sets forth the permissible means of witness impeachment. That rule provides, in part, that

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness.... [45]

■ Normally, when evaluating the admissibility of evidence for impeachment, the trial judge should consider, among other things, the risk of "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or marginally relevant." [46]

**41.** Del.Supr., 684 A.2d 1232, 1233 (1996).

**42.** *See Allen v. State*, Del.Supr., 644 A.2d 982, 988 (1994).

**43.** Because the court did not commit plain error in applying D.R.E. 404(b), we do not need to address whether the evidence was also admissible under the "inextricably intertwined doctrine." *See Pope*, 632 A.2d at 75–77. We note, parenthetically, that the Federal Rules of Evidence (F.R.E.) include specific provisions relating to this general subject: Rule 413 (Evidence of Similar Crimes in Sexual Assault Cases); Rule 414 (Evidence of Similar Crimes in Child Molestation Cases); and Rule 415 (Evidence of Similar Acts in Civil Cases Concerning Sexual Assault or Child Molestation). These rules, which became effective for federal courts in 1995, have not been adopted in Delaware. Nevertheless, the Permanent Advisory Committee on the Delaware Rules of Evidence, created by Order

and Administrative Directive No. 121, both dated May 16, 2000, is actively studying, among other things, the F.R.E. provisions to determine what changes, if any, should be included in revising D.R.E. which, in general, have been patterned (with some exceptions) after the F.R.E. The Committee is required to give priority to several rules, including F.R.E. 413 through 415 and to report to the Supreme Court "its findings and recommendations on these particular issues by September 15, 2000."

**44.** D.R.E. 607.

**45.** D.R.E. 608(b); *accord Abrams v. State*, Del. Supr., 689 A.2d 1185, 1190 (1997).

**46.** *Snowden v. State*, Del.Supr., 672 A.2d 1017, 1025 (1996) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

The case against Trump rested in large measure on conflicting testimony, making this, in the words of the prosecutor, "a credibility case." Correspondingly, it is critically important for a jury to learn about evidence that will allow it to make credibility determinations. Understanding what a witness means when promising to tell the truth is a core credibility issue.[47] Trump's brief testimony about the Family Court proceeding expresses Trump's understanding of the difference between telling the truth and lying. The following excerpt from the prosecutor's cross-examination of Trump is illustrative:

> Q: So when you said you were going to go to court and say the child is mine, even though the child was not yours, you don't consider that to be a lie?
>
> A: No. The courts—they already had our statements that we already—everything in Family Court. They knew Larry was the father. They knew I wasn't. And they knew I was trying to adopt the child.

The testimony seems to imply the strange rationale that Trump does not consider himself to be lying if he is trying to accomplish a good purpose (*i.e.,* adopting his wife's child), particularly because he claims that the Family Court officials know the true facts. We do not see any risk of prejudice and believe that the testimony squarely related to his "character for truthfulness or untruthfulness." Consequently, the trial court did not abuse its discretion by permitting the cross-examination.

47. Young children, for example, often are asked whether they understand the difference between telling the truth and lying to determine their competency to testify.

48. *Robertson v. State,* Del.Supr., 596 A.2d 1345, 1355 (1991).

49. *See Zutz v. State,* Del.Supr., 160 A.2d 727, 729 (1960); *see also Knight v. State,* Del. Supr., 690 A.2d 929, 932 (1996).

## Challenge to Sufficiency of the Evidence

Trump contends that the jury had insufficient evidence to convict him. When a defendant argues that the evidence was insufficient to support a conviction, "[t]he standard is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[48] In conducting such an analysis, this Court carefully avoids second-guessing judgments within the traditional province of the jury.[49]

Trump argues that the evidence could not sustain a conviction because neither the complainant nor any of the State's witnesses could establish the specific dates and times on which many of the alleged sexual assaults occurred. The jury, however, acquitted Trump of nine counts suggesting that it judged that the evidence against Trump was sufficiently strong despite that error in the complainant's recollection.

Furthermore, the elements of the charged offense do not require the State to prove exactly when the unlawful sexual intercourse occurred, just that it in fact occurred. To convict Trump of Unlawful Sexual Intercourse in the First Degree, the State needed to prove four elements beyond a reasonable doubt: that Trump had sexual intercourse with the complainant; that the age of the complainant was less than sixteen; that the complainant was not Trump's voluntary social companion;[50] and that Trump's conduct was intentional.[51] Sufficient evidence existed at

50. According to the applicable law at the time, a person younger than sixteen could not be considered the "voluntary social companion" of someone exercising care or custody over that child. *See* 11 *Del.C.* § 761(h) (revised and redesignated in 1998 to § 761(i), (j)).

51. *See* 11 *Del.C.* § 775(a)(4) (repealed 1998). The conduct that was formerly considered Unlawful Sexual Intercourse First Degree is now illegal under § 773, Rape in the First Degree. The revised language drops the "vol-

trial for a rational jury to find that the State proved all of these elements beyond a reasonable doubt.

### Conclusion

The grounds asserted for reversal being insufficient, the judgment of the Superior Court is affirmed.

untary social companion" element and instead makes it illegal to "intentionally engage[ ] in sexual intercourse with" a person younger than sixteen when "the defendant stands in a position of trust, authority or supervision over the child, or is an invitee or designee of a person who stands in a position of trust, authority or supervision over the child." 11 *Del.C.* § 773(a)(6).