**STATE of Delaware,**

v.

**Robbie WATSON, Defendant.**

**Cr. I.D. No. 0103010698.**

Superior Court of Delaware,
New Castle County.

Submitted: June 21, 2002.
Decided: July 8, 2002.
Amended & Corrected: July 17, 2002.

---

**34.** *Derdiger, supra,* at 1015, n. 30.

Susan B. Purcell, Deputy Attorney General, Department of Justice, Wilmington, DE, for the State of Delaware.

Joseph A. Hurley, Wilmington, DE, for Defendant.

Aaron R. Goldstein, Wilmington, DE, for the City of Wilmington.

**OPINION**

SLIGHTS, J.

## I. INTRODUCTION

Defendant, Robbie Watson ("Defendant"), is a former officer with the City of Wilmington Police Department ("WPD") who has been charged by the Grand Jury with four counts of Rape Third Degree. The State has subpoenaed records developed and maintained by the Internal Affairs division of the WPD relating to its investigation(s) of the Defendant while he was a police officer (the "IA File"). The State seeks to utilize records within the IA File in its cross-examination of the Defendant at trial to the extent the records reveal past incidents of dishonesty involving the Defendant. In addition, the State believes that the IA File may contain information relating to an investigation of Defendant for alleged sexual misconduct

unrelated to the current charges against him.

Following a hearing on the City of Wilmington's Motion to Quash Subpoena ("the Motion"), the Court determined that an *in camera* review of the IA records was warranted in order to "insure that the confidentiality of such files is not compromised improperly." [1] The Court has reviewed the records and its decision on the Motion to Quash follows.[2] The motion is **GRANTED in part and DENIED in part**.

## II. DISCUSSION

### A. The Court's Process in Resolving the Motion

Before addressing the merits of the Motion, the Court must clarify the issue raised by the Motion and, more importantly, the issues not raised by the Motion. The Court has determined that the State has met a threshold burden of establishing that its subpoena is not merely a vehicle from which it will embark on an unwarranted exploration of the Defendant's professional past.[3] Accordingly, the Court agreed to conduct an *in camera* inspection of the IA File for the purpose of determining whether the protective cloak of confidentiality should be removed with respect to all or portions of the records contained therein. In this regard, the Court's review of the IA File was guided by the State's proffered justification for the subpoena, i.e., the records may be utilized on cross-examination to the extent they bear upon the Defendant's credibility. The Court has not considered and cannot discern any

1. *See Snowden v. State*, 672 A.2d 1017, 1023 (Del.1996)(holding that party seeking the confidential file should advance "some factual predicate which makes it reasonably likely that the file will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw") (citation omitted).

2. The records reviewed by the Court were inventoried on the record by counsel for the City of Wilmington on February 7, 2002, when the City's Motion to Quash was first presented.

3. *See Snowden*, supra.

other basis upon which records from the IA File should be produced in response to the subpoena.[4]

The Court has not determined whether any records that it might order to be produced from the IA File in response to the subpoena will ever see the light of the courtroom. That question will be resolved on another day.[5] Nevertheless, by necessity, the Court has considered the relevant evidentiary rules through which the IA records *might* be utilized in order to determine if there is a basis to release the records to the parties. The Court's consideration of the applicable rules of evidence thus far has been limited by the narrow focus of the motion *sub judice,* and has extended only so far as was necessary to determine if the City should be compelled to produce otherwise confidential information. Nevertheless, the Court will take this opportunity to discuss the applicable rules briefly in order to facilitate discussions at trial should the State seek to utilize any of the information subject to this Order during cross-examination of the Defendant or otherwise.

### B. Delaware Rule of Evidence 608(b)

D.R.E. 608(b) ("Rule 608(b)") outlines the permissible means of impeaching the credibility of a witness. It allows for the cross-examination of a witness concerning specific acts of misconduct that bear upon the witness' reputation for truthfulness.[6] Rule 608(b) states:

*Specific instances of conduct.* Specific instances of the conduct of a witness, for the purposes of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.[7]

 Rule 608(b) makes clear that cross-examination regarding specific incidents of misconduct bearing upon a witness' credibility is not automatically permissible. Rule 608(b) is a rule of exclusion, not inclusion. The decision to permit or deny cross-examination regarding past incidents of misconduct to attack credibility is committed to the sound discretion of the trial court.[8] Of course, judicial discretion is never abso-

---

**4.** As noted at the time of oral argument on the Motion, the Court is hard-pressed to fathom a legitimate exception to the proscriptions of D.R.E. 404(b) and the State has proffered none.

**5.** *See State v. Estrada,* 69 Haw. 204, 738 P.2d 812, 822 (1987)(directing the trial judge on remand to disclose relevant portions of an internal affairs file to both sides who "shall then have an opportunity to review the evidence and argue which portions should be admitted and which other portions should be excluded.")

**6.** *Garden v. Sutton,* 683 A.2d 1041, 1043 (Del. 1996).

**7.** D.R.E. 608(b).

**8.** *Garden,* 683 A.2d at 1043 (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

lute and, in this context, the trial judge must be mindful that the court "cannot foreclose a legitimate inquiry into a witness' credibility."[9] But if Rule 608(b) is the proffered vehicle by which the witness is to be discredited, the past instances of misconduct must be directly "probative of truthfulness or untruthfulness." If all that can be said is that the past conduct was improper, illegal or immoral, then the requisite foundation under Rule 608(b) has not been met.[10]

■ To determine whether an inquiry regarding past instances of misconduct is "legitimate,"[11] the trial judge should consider: "(1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence to the question of bias; (3) the danger of unfair prejudice, confusion of issues, and undue delay; and (4) whether the evidence is cumulative."[12] In addition to the factors enumerated in *Weber*, the Court also may consider the temporal proximity of the prior misconduct to the events giving rise to the charges.[13]

■ Recognizing the likelihood that the character of a witness may be impugned by simply asking questions regarding past misconduct,[14] the Court should consider the quality of the evidence to be utilized under Rule 608(b). Before counsel may question a witness regarding past instances of misconduct, counsel must possess a "good faith, reasonable basis" to believe that the conduct, in fact, occurred.[15] While the quantum of proof intended by the use of phrases like "good faith basis" or "reasonable basis" has not been articulated specifically in the case law, at least one learned treatise suggests that these phrases express "a notion very close to probable cause."[16] Professors Mueller and Kirkpatrick suggest that holding the questioner to a "probable cause" standard is particularly important if the witness is a party, "and perhaps especially [so] if he is a criminal defendant."[17] This enhanced scrutiny does not, however, appear to be endorsed in the case law.

■ Once the Court determines that the Rule 608(b) foundation has been laid, the Court next must focus on the scope and

**9.** *Weber v. State*, 457 A.2d 674, 681 (Del.1983) (citations omitted).

**10.** *See United States v. Sellers*, 906 F.2d 597, 602 (11th Cir.1990) (drug use not probative of truthfulness); *Crimm v. Missouri P.R. Co.*, 750 F.2d 703, 707–08 (8th Cir.1984) (drug trafficking not probative of truthfulness); *United States v. McNeill*, 887 F.2d 448, 452–54 (3d Cir.1989) (violent behavior not probative of truthfulness); *United States v. Dickens*, 775 F.2d 1056, 1058 (9th Cir.1985)(associating with criminal enterprise or participants therein not probative of truthfulness).

**11.** *Weber*, 457 A.2d at 681.

**12.** *Id. See also Trump v. State*, 753 A.2d 963, 972 (Del.2000) (same) (citations omitted).

**13.** *See United States v. Merida*, 765 F.2d 1205, 1216–17 (5th Cir.1985)(misconduct more than 10 years past too remote).

**14.** *See Michelson v. United States*, 335 U.S. 469, 481, 69 S.Ct. 213, 93 L.Ed. 168 (1948)(judge should assess quality of the evidence of past misconduct to ensure that groundless questions do not "waft an unwarranted innuendo into the jury box").

**15.** *United States v. Holt*, 817 F.2d 1264, 1273 (7th Cir.1987)(questioning regarding defendant's prior use of stolen checks proper when prosecutor had "good faith basis" to believe defendant had engaged in such misconduct); *United States v. Leake*, 642 F.2d 715, 718–19 n. 3 (4th Cir.1981) (questioner must possess "reasonable basis" to believe witness "actually committed the act").

**16.** 3 Mueller & Kirkpatrick, *Federal Evidence* § 265 at 171 (2d Ed. 1994).

**17.** *Id.* at 170.

means of the examination. "[T]he limitation[s] created by Rule 608(b) are designed to avoid 'mini-trials' into the 'bad acts' of a witness which would require the use of extrinsic evidence to prove such acts." [18] Accordingly, if the Court allows cross-examination of a witness regarding specific incidents of misconduct that bear on the witness' credibility, the Court must ensure that such incidents are not proven by extrinsic evidence.[19] Indeed, if, on cross-examination, the witness denies the past misconduct, Rule 608(b) prohibits further inquiry because any evidence of the conduct itself necessarily would be extrinsic evidence of a collateral matter and, therefore, inadmissible.[20] By excluding extrinsic evidence of misconduct, Rule 608(b) animates the maxim that "counsel must take the answer of the witness" who is questioned about past misconduct.[21]

■ That "counsel must take the answer of the witness" does not necessarily mean that counsel must take the *first* answer of the witness.[22] To foster meaningful cross-examination, the Court must allow counsel an opportunity to overcome an initial denial of past misconduct with follow-up questions.[23] And counsel may use (and openly refer to) documents while phrasing the questions even though the documents themselves are inadmissible.[24] Effective cross-examination, however, must be tempered by the need to protect against the prejudice which inevitably will flow from loaded rhetorical questions, the answers to which are less important to the interrogator than the questions themselves. A balance of these competing concerns, in the exercise of the Court's discretion, must be struck.

## C. Delaware Rule of Evidence 403

■ The trial court also must consider whether to allow cross-examination regarding specific incidents of misconduct in the context of D.R.E.403 ("Rule 403").[25] Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

Delaware courts are obliged to consider a list of non-exclusive factors when balancing whether evidence of "prior bad acts" under D.R.E. 404(b) are more prejudicial than probative.[26] These same factors may also offer some guidance when the Court conducts the Rule 403 balancing in the context of Rule 608(b). They are: (1) the extent to which the point to be proved is disputed; (2) the adequacy of proof of prior conduct; (3) the probative force of the evidence; (4) the proponent's need for the

18. *Weber,* 457 A.2d at 680 (citation omitted).

19. *Trump,* 753 A.2d at 972; *Shelton v. State,* 650 A.2d 1291 (Del.Supr.1994); *Ketchum v. State,* 1989 WL 136970 (Del.Supr.); *Scott v. State,* 642 A.2d 767 (Del.1994).

20. *State v. Augustine,* 1995 WL 411451 (Del.Super.1995); *Hill v. State,* 734 A.2d 158 (Del.1999).

21. *Carter v. Hewitt,* 617 F.2d 961, 971 (3d Cir.1980).

22. *Id.* at 969–73.

23. *Id.*

24. *See United States v. Jackson,* 882 F.2d 1444, 1448–49 (9th Cir.1989); *United States v. Drake,* 932 F.2d 861, 866–67 (10th Cir.1991).

25. *See U.S. v. Olivo,* 80 F.3d 1466, 1470 (10th Cir.1996) ("Rule 608(b) is subject to Rule 403"); *Thorpe v. State,* 1992 WL 354221 (Del.1992) (same).

26. *Trump,* 753 A.2d at 971 (citing *Getz v. State,* 538 A.2d 726, 734 (Del.1988)).

evidence; (5) the availability of less prejudicial proof; (6) the extent of the prejudice associated with the evidence; (7) the similarity between the charged offense and the prior activity; (8) the effectiveness of limiting instructions; and (9) whether the prior act evidence would significantly prolong the trial.[27]

In weighing the potential prejudice of the impeachment evidence against its probative value, the leading evidence treatises note that special consideration may be given to the identity of the witness to be impeached, distinguishing between a party who testifies, especially a criminal defendant, and other witnesses.[28] While empirical evidence suggests that jurors are more likely to convict a defendant who has been impeached through cross-examination about prior bad acts,[29] most courts decline to distinguish between an accused who testifies and any other witness with respect to the means by which an interrogator may impeach the witness' credibility through cross-examination.[30] The Rules of Evidence do not distinguish criminal defendants from other parties or witnesses, and the Court is not inclined to inject any such distinction, *ipso jure*, in its analysis under D.R.E. 403 or 608(b).

## D. Certain Records Within the IA File May Satisfy Rules 608(b) and 403

■ Having reviewed Defendant's IA File *in camera*, the Court is satisfied that certain records contained therein may bear upon the Defendant's credibility. Specifically, the IA File documents three (3) incidents that may call Defendant's truthfulness into question:[31]

1. OPS# 97–382: Defendant's truthfulness questioned regarding amount of force he used to apprehend a suspect;

2. OPS# 00–110: Defendant's truthfulness questioned regarding the accuracy of his report of an automobile accident investigation;

3. OPS# 01–611: Defendant's truthfulness questioned regarding his association with known criminals and sick time policy violations.

■ These alleged instances of past misconduct, at first glance, appear to bear upon Defendant's credibility. Because this case likely will turn on the jury's determination of the credibility of witnesses, including the Defendant if he chooses to testify, the probative value of past instances of misconduct which may reflect upon

---

**27.** *Id.* (reciting these factors in the context of the required 404(b) analysis).

**28.** *See* 3 Weinstein, *et al.*, *Weinstein's Federal Evidence* § 608.22(2)(c) at 608–61 (2d Ed. 2002); 3 Mueller & Kirkpatrick, *Federal Evidence* § 265 at 170–171 (2d Ed. 1994).

**29.** Robert D. Okun, *Character and Credibility: A Proposal To Realign Federal Rules Of Evidence 608 and 609*, 37 Vill. L. Rev. 533 (1992).

**30.** *See United States v. Beros*, 833 F.2d 455, 463–464 (3d Cir.1987)(court allowed impeachment evidence that defendant lied on his marriage license holding that when defendant testified he "subjected his credibility to scrutiny as do all witnesses"); *United States v.*

*Chevalier*, 1 F.3d 581, 583–584 (7th Cir.1993)(holding that because defendant took the stand, he was subject to impeachment with prior instances of misconduct); *United States v. Goodson*, 155 F.3d 963, 968 (8th Cir.1998)(defendant's credibility may be attacked in same manner as that of any other witness); *United States v. Schwab*, 886 F.2d 509, 511 (2d Cir.1989)(evidence of misconduct may be relevant to impeachment of witness, including defendant).

**31.** Contrary to the State's suspicions, the records do not contain any information relating to alleged past sexual misconduct on the part of Defendant. For this reason, as stated, D.R.E. 404(b) would appear to have no place in the Court's analysis.

the witness' credibility is particularly acute.[32] And instances of police misconduct involving allegations of dishonesty, in certain circumstances, can be utilized on cross-examination to attack the credibility of an officer on trial for unrelated charges.[33]

The Court is satisfied that the records relating to the three instances of alleged misconduct identified above should be produced to the State in response to its subpoena (and reciprocally to the Defendant) so that the State may consider whether to attempt to utilize this information during the cross-examination of the Defendant.[34] The State will be given an opportunity to argue that the instances of misconduct described in the records identified above can pass through the evidentiary filters embodied in D.R.E. 403 and 608(b). The Defendant, of course, may argue to the contrary.

## III. CONCLUSION

The City of Wilmington's Motion to Quash is **GRANTED in part and DENIED in part**. The documents relating to the three incidents discussed herein shall be available to the parties for inspection and copying the morning of Tuesday, July 9, 2002. Counsel for the City of Wilmington may be present to monitor the inspection and reproduction of such documents

and to retrieve the remaining documents not subject to production. Should the State seek to cross-examine Defendant regarding any of the incidents described in the documents, counsel will first notify the Court and defense counsel so that argument can be received outside the presence of the jury. The Court will be guided by the criteria set forth and discussed herein in determining whether such cross-examination will be permitted and, if so, to what extent.

**IT IS SO ORDERED.**

---

**32.** *See Trump*, 753 A.2d at 973 (finding that the trial court did not abuse its discretion in allowing the State to cross-examine a defendant charged with sexual assault about his intention to lie to the Family Court in an unrelated proceeding, the Court noted that when testimony conflicts "it is critically important for a jury to learn about evidence that will allow it to make credibility determinations.")

**33.** *See United States v. Davis*, 183 F.3d 231, 257 (3d Cir.1999) (Court found that it was "clearly proper" to question the defendant [an officer with the New York Transit Au-

thority on trial for obstruction of justice, conspiracy to obstruct justice, racketeering, and witness tampering] regarding his misappropriation of gasoline for personal use and lying to an Internal Affairs officer as a means to attack the defendant's credibility at trial).

**34.** *See Estrada*, 738 P.2d at 822 (noting that trial court should afford counsel opportunity to review records ordered to be produced from confidential file, and to make appropriate arguments, before ruling on whether information contained in the records can be utilized to attack the credibility of a witness under Rule 608(b)).