Deshawn DRUMGO, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 39, 2008.

Supreme Court of Delaware.

Submitted: April 22, 2009.
Decided: July 1, 2009.

Andrew W. Gonser, Esquire (argued),
Gonser and Gonser, P.A., Wilmington, DE,
for Appellant.

Timothy J. Donovan, Jr., Esquire (argued), Department of Justice, Wilmington,
DE, for Appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

BERGER, Justice:

In this appeal we consider, among other things, whether the State's derogatory comments during closing argument deprived appellant of a fair trial. Deshawn Drumgo was convicted of second degree murder in the stabbing death of Larry Larkin. In closing, the State made disparaging comments about the defendant's testimony. This Court has repeatedly admonished the State to follow the American Bar Association's standards governing acceptable comment on the evidence. Once again, the State failed to heed this Court's instruction. This Court also has repeatedly admonished defense counsel to object during the trial if they witness prosecutorial misconduct. Drumgo failed to do so. We conclude that the State's improper comments do not warrant reversal, as this was not a close case and the prosecutorial misconduct did not amount to plain error. Since we find no merit to Drumgo's other claims, his convictions will be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2006, in the courtyard of an apartment complex in Wilmington, Deshawn Drumgo fatally stabbed Larry Larkin. Darlene Miller, one of several witnesses to the attack, heard screaming and had gotten out of her car to see what was happening. When she saw Drumgo lunge at Larkin, she returned to her car because she did not want to watch a fight. Larkin then walked to Miller's car and asked her to take him to the hospital. Larkin was holding his T shirt against his chest, and told Miller that "he stabbed me." Larkin died at the hospital approximately one hour later.

Miller testified in the afternoon, on the second day of trial. During the lunch recess, Juror No. 9 saw and overheard Juror No. 1 talking to Miller. Juror No. 1 immediately reported the contact to a bailiff, and the trial court interviewed both jurors before the trial resumed. Juror No. 1 explained that she knew Miller because Miller has been a customer at the stores where Juror No. 1 worked. Miller asked Juror No. 1 whether the juror knew Drumgo, and then told Juror No. 1 that she was going to testify in a murder case involving her son's best friend, Larkin. After hearing both jurors' accounts of the contact, the trial court determined that they could remain on the jury, and Drumgo did not object.

Drumgo testified that he was in the courtyard at the time of the stabbing, and heard someone yell "fight." Drumgo knew Larkin well, and saw that Larkin was fighting with a big guy wearing black clothing. Drumgo claims that he came to Larkin's aid, and told the assailant to "chill." But Drumgo left when he saw that the assailant had something silver, which Drumgo assumed was a knife. Drumgo testified that he did not know that Larkin had been hurt, and that he believed the State's witnesses identified him as the assailant because they were protecting someone.

During closing argument, the prosecutor reviewed the witnesses' testimony, and then said, "It all winds up with the evidence, except his story, his ridiculous story that he came in here and told about the phantom man."[1] The prosecutor described Drumgo's testimony as a "sales pitch" and said that his reference to a shiny object was "an insult to your intelligence" because there was no sunlight un-

---

1. Appellant's Appendix, A–77.

der the tree where the attack took place.[2] Drumgo was convicted of second degree murder and related weapons offenses. This appeal followed.

## DISCUSSION

▇▇▇ Drumgo first argues that the trial court should have excused the two jurors who had contact with Miller in the courthouse, prior to Miller's testimony. Because Drumgo did not object in the trial court, we review for plain error, which is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[3] After reviewing the jurors' explanations of the contact with Miller, we find no plain error.

Drumgo relies on *State v. Deshields*[4] in arguing that the contact with Miller tainted the two jurors. The facts in *Deshields*, however, are readily distinguishable. In that case, the State's chief investigating officer ate lunch with a juror while the jury was deliberating the verdict. The officer knew that the other person was a juror, but did not find another table, and spent the next 20 minutes discussing their backgrounds and their experiences in Japan. They did not discuss the case. The trial court found that the contact was egregious and highly prejudicial because it took place during deliberations; the officer knew he was conversing with a juror; the contact was extended; and the personal exchange could have affected the juror's evaluation of the officer's credibility. Here, by contrast, the contact was very brief and it occurred before Miller testified. Although Miller told Juror No. 1

that Larkin was her son's best friend, she repeated that statement at the beginning of her testimony. Thus, there is no reason to suspect that Drumgo was prejudiced by any aspect of Miller's contact with the jurors.[5]

Drumgo next argues that the trial court abused its discretion by excluding the expert testimony of a forensic nurse who would have testified about the nature of Larkin's injury. On appeal, Drumgo claims that the nurse's testimony would have been relevant to establish the intent of the person who stabbed Larkin. At trial, however, Drumgo explained that the nurse would have testified about the medical care Larkin received and the likelihood that he would have survived if he had received better, or more prompt, care. The trial court correctly ruled that the forensic nurse was not qualified to opine on Larkin's cause of death, and Drumgo does not contest that ruling. The trial court left open the possibility that Drumgo could call the nurse to testify about the nature of Larkin's wounds:

> The motion doesn't go to your ability to present other evidence of the injury; the motion *in limine* seeks to restrict your proposed witness, a nurse, from testifying regarding cause of death. I agree with the State.... So the motion will be granted.[6]

In sum, the trial court never precluded Drumgo from presenting evidence about the nature of Larkin's wounds. Thus, this claim lacks merit.

2. *Id.* at A–78.

3. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

4. 1996 WL 659490 (Del.Super.).

5. *See: Weber v. State*, 547 A.2d 948, 954 (Del. 1988) ("The determination of a juror's impar-

tiality is the responsibility of the trial judge who has the opportunity to question the juror, observe his or her demeanor, and evaluate the ability of the juror to render a fair verdict.").

6. Appellant's Appendix, A–10.

Finally, Drumgo complains that he was prejudiced by the prosecutor's improper comments during closing argument. The record supports Drumgo's claim that the prosecutor belittled Drumgo:

> You know Drumgo walked out of that courtyard—by the way, wasn't that cute at the end of cross-examination yesterday when all of a sudden he was too confused to say which way he went out? [7]

> \* \* \*

> It all winds up with the evidence, except his story, his ridiculous story that he came in here and told you about the phantom man.[8]

> \* \* \*

> And didn't he tell you he saw a shiny object. Ladies and gentlemen, what an insult to your intelligence.[9]

Finally, the prosecutor called Drumgo's testimony a "sales pitch" that the jury should not "buy." [10]

It is settled law that, "[t]he prosecutor represents all the people, including the defendant and must seek justice, not merely convictions." [11] In keeping with the American Bar Association's standards governing prosecution and defense functions, we have held that it is improper for the prosecutor to disparage defense counsel or "sarcastically to mock the defense case...." [12] By calling Drumgo's testimony "ridiculous," "cute," and a "sales pitch," the prosecutor improperly denigrated the defense.

As previously noted, however, Drumgo did not object. Under the applicable plain error standard of review:

> [C]redibility must be a central issue in a close case [and the State's improper] comments must be so clear and defense counsel's failure to object so inexcusable that a trial judge, in the interest of fundamental fairness, has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction.[13]

This was not a close case. There were numerous witnesses, many of whom knew Drumgo and Larkin. Moreover, Drumgo admitted that he intervened in the fight that resulted in Larkin's death, thus placing himself at the scene of the crime. Finally, the prosecutor's comments, although improper, were not so extreme and inexcusable that the trial court was required to intervene. Accordingly, we find no plain error.

## CONCLUSION

Based on the foregoing, the judgments of the Superior Court are hereby affirmed.

---

7. *Id.* at 77.

8. *Ibid.*

9. Appellant's Appendix, A–78.

10. *Ibid.*

11. *Hunter v. State,* 815 A.2d 730, 735 (Del. 2002) (Internal quotations omitted.)

12. *Bruce v. State,* 781 A.2d 544, 555 (Del. 2001).

13. *Trump v. State,* 753 A.2d 963, 964 (Del. 2000).