James CLAYTON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 173, 2000.

Supreme Court of Delaware.

Submitted: Nov. 21, 2000.
Decided: Jan. 4, 2001.

James D. Nutter, Office of the Public Defender, Wilmington, for Appellant.

Joelle M. Wright, Deputy Attorney General, Department of Justice, Wilmington, for Appellee.

Before VEASEY, C.J., HOLLAND and STEELE, JJ.

PER CURIAM.

The issues in this appeal are (1) whether the prosecutor improperly commented on the credibility of witnesses during the State's rebuttal closing argument and (2) whether the allegedly improper comments constituted plain error and undermined the reliability of the outcome of Clayton's trial. We find that, although the prosecutor impermissibly commented on the truthfulness of witnesses, the prosecutor's comments were not so clearly improper that they constituted plain error. As we observed in *Trump v. State*,[1] "we cannot expect trial judges to act *sua sponte* unless the vouching is clear." Therefore, we find no plain error and affirm the judgment of the Superior Court.

### Facts

At 5:30 p.m. on March 6, 1999, an undercover agent in an unmarked car equipped with audio and video recording devices approached Robert Waters and another

---

1. Del.Supr., 753 A.2d 963, 964 (2000).

person later identified as William Clayton. The officer expressed a desire to purchase cocaine. Waters then got into the officer's car, and Clayton allegedly told Waters to bring the car into a nearby alley. In the alley, the officer asked to see the cocaine before paying. Clayton, who was standing near the officer's car, then allegedly told Waters to "come and get it." Evidently in response to this request, Waters walked over to Clayton and the officer observed Clayton "hand[ ] Mr. Waters something." Waters returned to the officer's car with a bag of crack cocaine.[2] Thirty minutes later, police officers arrested Clayton, but the police did not find illegal drugs on his person or in the alley. The State charged Clayton with delivery of cocaine, delivery of cocaine within 1000 yards of a school, and second-degree conspiracy. At trial, Waters testified that Clayton was not present during the first drug transaction. Rejecting this testimony, a jury convicted Clayton on all three charges.

### Improper Comments on Witness Testimony

■ Clayton's appeal concerns the effect of several remarks by defense counsel and by the prosecutor during closing arguments. During closing arguments, defense counsel asserted that police officers had "changed their story" and had "manipulated the facts" to secure Clayton's con-

viction. In response, the prosecutor stated in rebuttal summation:

> The first and most important point that I'm going to make is that [defense counsel's] theme of his closing argument is manipulation of the truth, the manipulation of facts and deception. The State's position is that the defense witness is manipulating the truth in this case and the State's witnesses are not.
>
> The defense witness, Robert Waters, came before you and manipulated the truth to the point where he was contradicted right before your eyes. The State's witnesses have not done that. Don't let that confuse you because the State's witnesses, the detectives, have been consistent throughout.[3]

### Standard of Review

■ Because defense counsel did not object at trial to the prosecutor's rebuttal comments and because the trial court did not intervene *sua sponte*, the statements are subject to review in this Court only for plain error.[4]

### Propriety of the Prosecutor's Remarks

■ As a general rule, prosecutors may not express their personal opinions or beliefs about the credibility of witnesses or about the truth of testimony.[5] As a

---

2. A few minutes later, another officer purchased crack from Waters in the same location but Clayton was not present.

3. The prosecutor also asserted that the State was not trying to "conceal anything or be untruthful" and sought to present its witnesses "in the most truthful way we can." Viewed in context, these comments (relating to the general truthfulness of the State's case) were not improper vouching. At worst, these comments were poorly worded attempts to encourage the jury to view the videotape of the transaction during its deliberations and to explain the absence of the purchase money at trial. As a consequence, we will not discuss them further.

4. *See* Supr. Ct. R. 8; *Robertson v. State*, Del. Supr., 596 A.2d 1345, 1356 (1991) (holding

that, if not made at trial, objections to the State's rebuttal argument are deemed waived unless "substantial rights are jeopardized and the fairness of the trial imperiled"); *Trump v. State*, Del.Supr., 753 A.2d 963, 964–65 (2000) (holding that the error must "be so clear and defense counsel's failure to object so inexcusable that a trial judge ... has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction"); *see also Robertson*, 596 A.2d at 1356 (defining plain error as "material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice").

5. *See Brokenbrough v. State*, Del.Supr., 522 A.2d 851, 855 (1987) (quoting *ABA Standards*

corollary to this rule, we have held that prosecutors may refer to statements or testimony as a "lie" only (1) if one may legitimately infer from the evidence that the statement is a lie and (2) if the "prosecutor relates his argument to specific evidence which tends to show that the testimony or statement is a lie."[6] As officers of the court and as representatives of the State, prosecutors have a special duty to ensure that any convictions are based on the evidence presented at trial, rather than on the basis of the prosecutor's personal opinions.[7] Where prosecutors fail to provide an evidentiary foundation for their conclusions about the truthfulness of a witness, they impermissibly tip the scales against the defense.[8]

 Applying this analysis to the present case,[9] the State correctly asserts that its manipulation-of-the-truth comment is at least arguably supported by the evidence. In particular, Waters testified that

Clayton was not present when the undercover agent first approached Waters, but the videotape of the conversation showed that another person, later identified as Clayton, was present. Yet the prosecutor's comment did not discuss the videotape or other "specific evidence" indicating that Waters had manipulated the truth.[10] As a result, the prosecutor's comment about Waters' testimony was improper because the jury could interpret the comment as an official condemnation of the testimony by the State.[11]

 Another corollary of the general rule prohibiting counsel from commenting on the truth of testimony is the prohibition on personally "vouching" for the credibility of a witness. The Court in *Saunders v. State*[12] defined improper vouching as a prosecutor's comment implying personal knowledge of the truth of a witness' statement "beyond that logically inferred from

---

for Criminal Justice § 3–5.8(b) (3d ed.1993)); see also Rule 3.4(e), Delaware Lawyers' Rules of Professional Conduct (providing that lawyers may not "state a personal opinion as to ... the credibility of a witness ....").

6. *Hughes v. State*, Del.Supr., 437 A.2d 559, 571 (1981).

7. See *Trump*, 753 A.2d at 967 ("The cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own.") (quoting *Miller v. State*, Del.Supr., No. 434, 1998, 750 A.2d 530, Hartnett, J. (Feb. 16, 2000) (ORDER), Order at ¶ 14) (internal quotation marks omitted); see also id. at 968 ("[Prosecutors] 'represent[ ] all the people, including the defendant.' Therefore, they have the dual obligations of presenting the State's case 'with earnestness and vigor' and the equal 'duty to see that justice be done by giving defendant a fair and impartial trial.' ") (internal footnotes and citations omitted).

8. See id. ("Statements that a defendant is a 'liar,' or is 'guilty,' or that a State's witness is 'truthful,' without directly connecting those statements to evidence before the jury, are likely to be characterized by an appellate court as personal opinion.") (quoting Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing Ar-*

gument, 51 Maine L.Rev. 242, 247 (1999)) (internal quotation marks omitted).

9. It is appropriate to apply the *Hughes* analysis to the present case. Both a "lie" and a "manipulation of the truth" carry the same impact on the jury because they both connote an intentional misrepresentation designed to deceive the jury. See *Hughes*, 437 A.2d at 571 (defining a lie as "an untrue statement with intent to deceive").

10. The State in its rebuttal asserted that Waters "manipulated the truth to the point where he was contradicted right before your eyes." "[R]ight before your eyes" is not a reference to "specific evidence" (that is, the videotape) indicating that Waters lied in his testimony. Rather than providing an evidentiary basis for its assertion, the State presented only a conclusory statement about the truthfulness of Waters' testimony.

11. Cf. *Hughes*, 437 A.2d at 571 ("If the prosecutor's argument in support of his right to label testimony a 'lie' amounts to no more than saying that the jury should believe the State's witnesses and not those of defendant, the comment is impermissible.").

12. Del.Supr., 602 A.2d 623, 624 (1984); see also *Miller v. State*, Del.Supr., No. 434, 1998, 750 A.2d 530, Hartnett, J. (Feb. 16, 2000) (ORDER), Order at ¶ 12 (quoting *Saunders*, 602 A.2d at 624).

the evidence presented at trial." The *Saunders* Court was particularly concerned that such remarks amount to an official endorsement of the witness' testimony.[13]

The prosecutor's repeated assertions that the State's witnesses offered consistent testimony and had not "manipulated the truth" present a potentially serious problem under this analysis. The State suggests that these comments are permissible because the jury could have inferred from the evidence that the State's witnesses had not changed their testimony and had not "manipulated the truth." This conclusion is based on a misreading of *Saunders*.

The *Saunders* Court held that the jury must be able to infer "logically" from the evidence that the prosecutor's comment is accurate.[14] The use of the modifier "logically" indicates that the inference must be the product of some form of deductive reasoning and not merely a permissible inference. For example, the prosecutor's assertion that the State's witnesses had been "consistent" can be deduced from the evidence: If the witnesses have not contradicted themselves in their testimony or in their prior statements, they have arguably been "consistent."[15] But the prosecutor's assertion that its witnesses had not "ma-

nipulated the truth" has no such logical basis in the evidence. Although the jury is free to infer that the State's witnesses testified truthfully, nothing in the evidence necessarily or logically leads to this conclusion. By asserting that the State's witnesses had not "manipulated the truth," the prosecutor improperly endorsed the testimony of these witnesses. Consequently, the prosecutor's comments constituted impermissible vouching.

### Plain Error Analysis

■ In *Trump v. State*,[16] we held that improper comments by the State in its closing arguments constitute plain error only if: (1) credibility is a central issue, (2) the case is close, and (3) "the prosecutor's comments [are] so clear and defense counsel's failure to object so inexcusable that a trial judge ... has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction." In reviewing the impact of the State's improper comments during its rebuttal argument, we may also consider the context of the comments—particularly the extent to which the comments "respond substantially" to similar improper comments made by the defense.[17]

■ Applying the first factor from *Trump*, the State's case against Clayton

13. *See Miller*, Order at ¶¶ 12, 15, 750 A.2d 530; *Trump v. State*, Del.Supr., 753 A.2d 963, 967 (2000).

14. *Saunders*, 602 A.2d at 624.

15. It is worth noting that the prosecutor's rebuttal summation referred to specific portions of the officers' testimony in order to show that the officers had been "consistent throughout."

16. 753 A.2d at 964.

17. *See United States v. Young*, 470 U.S. 1, 12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) ("In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo."). Although we have not formally adopted the "invited response" rule, the

Court in *Miller v. State*, Del.Supr., No. 434, 1998, 750 A.2d 530, Hartnett, J. (Feb. 16, 2000) (ORDER), applied an analysis similar to that described in *Young. See Miller*, Order at ¶ 7, 750 A.2d 530 (observing that if the State responded to similar remarks by the defense, the conviction should be reversed only if the comments, "*taken in context*, unfairly prejudiced the defendant") (emphasis added); *see also id.* at ¶ 10, 750 A.2d 530 (observing that a prosecutorial comment must be "uninvited" to violate the prohibition on comments about a defendant's refusal to testify). Although such conduct by a prosecutor is inexcusable, the Court recognizes that " '[n]ot every improper remark by a prosecutor requires reversal, but only that which prejudicially affects substantial rights of the accused.' " *Brokenbrough v. State*, Del.Supr., 522 A.2d 851, 855 (1987) (quoting *Sexton v. State*, Del.Supr., 397 A.2d 540 (1979)); *see also Miller*, Order at ¶ 11, 750 A.2d 530.

was relatively thin because it depended largely on the testimony of the undercover officer.[18] To convict Clayton of the delivery of controlled substances and conspiracy, the jury had to believe the officer's identification of Clayton and had to infer from the officer's testimony that Clayton supplied the drugs (or otherwise aided Waters) in the drug transaction. Moreover, the trial court did not issue specific curative instructions to the jury to mitigate the impact of the improper comments during closing arguments.

Both parties agree, however, that defense counsel improperly commented on the credibility of the State's witnesses during the defense closing.[19] The State failed to object to these comments and, instead, responded to the comments in its rebuttal by arguing that the State's witnesses had not changed their testimony or "manipulated the truth." In view of defense counsel's improper comments during its closing, the prosecutor's comments neither resulted in serious prejudice to Clayton nor undermined the reliability of the jury's verdict. The State's response was not so clearly improper that it required the trial court to intervene *sua sponte* to cure the defect. Indeed, because the comment explicitly and substantially addressed an issue raised by the defense, the comment was arguably permissible under *Young*.[20] Moreover, since the jury heard similar "manipulation" arguments from both sides, the State's comments did not taint the jury's deliberations.

### *Conclusion*

Because we find that the prosecutor's improper remarks on witness testimony did not clearly warrant *sua sponte* intervention by the Superior Court, the judgment of the Superior Court is affirmed.

---

**18.** The videotape neither revealed the identity of the person who approached the undercover officers with Waters nor most of the orders that Clayton allegedly issued to Waters in conjunction with the drug transaction. The State relied on the officer's testimony to fill these gaps.

**19.** More specifically, defense counsel asserted that the officers had "manipulated the facts," had lied to Clayton during the drug transaction, and had "changed their testimony ... to accomplish their end."

**20.** For example, the prosecutor's misconduct was not as severe in the present case as in *Miller v. State*, Del.Supr., No. 434, 1998, 750 A.2d 530, Hartnett, J. (Feb. 16, 2000) (ORDER) (reversing in part because of prosecutor's uninvited statement that a "sworn officer of the law" would not lie under oath to secure a conviction). The misconduct was closer to the improper statements in cases that did not involve plain error and thus did not warrant reversal. *See, e.g., Thornton v. State*, Del. Supr., No. 307, 1993, 647 A.2d 382, Moore, J. (June 9, 1994) (ORDER), Order at ¶ 17 (finding prosecutor's statement that a witness' testimony was "very credible" was improper but not plain error); *Brokenbrough v. State*, Del. Supr., 522 A.2d 851, 858–59 (1987) (finding prosecutor's remark that "I suggest to you that the document is not worth the paper it is printed on" was "clearly improper but not plain error"); *Trump*, 753 A.2d at 967–68. The prosecutor's remark in this case was a slightly clearer example of vouching than the prosecutor's remark in *Trump*: "You [the jury] took what [a State witness] said to you and you said, you know, I submit to you, I think [the witness] is telling me the truth." *Trump*, 753 A.2d at 966. The *Trump* Court found that "the language of the prosecutor was too cryptic and garbled to be a clear signal of improper vouching." *Id.* at 970.