IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANTHONY ABBATIELLO, | § | |
| | § | |
| | § | |
| Defendant Below, | § | No. 386, 2016 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID. No. 1505015619 (N) |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: August 23, 2017
Decided: August 29, 2017

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

## ORDER

This 29th day of August, 2017, upon consideration of the briefs of the parties, it appears to the Court that:

(1) A Superior Court jury found the appellant, Anthony Abbatiello, guilty of Attempted Assault in the First Degree, Home Invasion, Robbery in the First Degree, four counts of Possession of a Firearm During the Commission of a Felony, Reckless Endangering in the First Degree, Possession of Firearms and Ammunition by a Person Prohibited, and several traffic offenses. Following a pre-sentence investigation, the Superior Court sentenced Abbatiello cumulatively to fifty-three years of Level 5 incarceration, suspended after approximately forty-six years and six

1

months, for decreasing levels of probation. This is Abbatiello's direct appeal.

(2) Abbatiello seeks reversal of his convictions on two grounds, neither of which he raised in the Superior Court. First, he argues that, during his trial, the State threatened—and thereby interfered with his right to call—potential alibi witnesses. Second, he complains that the prosecutor improperly interjected her personal opinion and vouched for the credibility of a witness in her closing argument. We find no merit in these arguments and therefore affirm Abbatiello's convictions.

(3) At trial, the State presented evidence that, on May 9, 2015, an intruder rushed into a motel room occupied by Carla Weston, pulled a gun, and demanded money. Weston complied and, after also taking Weston's purse and cellphones, the intruder fled. Weston then ran out of the room, yelling to a nearby crowd that she had been robbed.

(4) As Weston and others pursued the robber, he turned back and fired at least three shots in their direction. He then got into a black Mercedes sport utility vehicle and left the scene. Weston reported that the vehicle had a Delaware license plate number of P/C 19805. Weston also provided a description of the robber and his clothing that was consistent with a motel surveillance video, which captured the robber fleeing Weston's room with the purse and gun and the ensuing chase in the parking lot.

2

(5)    Delaware State Police investigators determined that a Delaware license plate number of P/C 198056—nearly identical to the number provided by Weston—had been issued to a 2011 black Mercedes sport utility vehicle. The investigators later determined that a man named Bernard Bryant had been given a speeding ticket while driving that vehicle about one-and-a-half hours after Weston was robbed. Phone records showed that there was attempted contact between cellphones linked to Abbatiello and Bryant on the night before and the morning of the robbery.

(6)    Based on Weston's physical description of the robber and the surveillance video, police created a photographic lineup, which included Abbatiello. Police showed the lineup to Weston who then identified Abbatiello as the man who robbed her.

(7)    Several days after the robbery, police went to Abbatiello's residence to conduct a search. As the police arrived, Abbatiello fled the residence and drove off in a vehicle. Back at Abbatiello's residence, police collected articles of clothing that were consistent with the clothing worn by the man who robbed Weston.

(8)    In addition to the evidence described above implicating Abbatiello in the crime, Abbatiello's podmate in prison testified that Abbatiello admitted to him that he had robbed a woman at the motel. The podmate said that Abbatiello also confessed to having a gun and firing it three times at a pursuing male but that he planned to call alibi witnesses.

3

(9)    Abbatiello did in fact call two alibi witnesses, both of whom placed Abbatiello in Philadelphia at the time of the robbery. Abbatiello also testified that he was in Philadelphia on the day in question.

(10)    Abbatiello first argues that the State interfered with his right to present additional alibi witnesses by threatening a perjury prosecution if they testified. This prosecutorial misconduct, Abbatiello argues, violated his due-process rights under the Fourteenth Amendment and his right to compulsory process for obtaining witnesses under the Sixth Amendment.

(11)    The purported threat was made shortly after the prosecutor had disclosed to Abbatiello's lawyer that she intended to call Abbatiello's podmate, who, she believed, would recount the substance of his conversation with Abbatiello, including his admission to the robbery and, notwithstanding the admission, his intention to call alibi witnesses. During a sidebar conference, the prosecutor alerted the trial judge to the State's intention to call the podmate and that "from [defense counsel's] point of view . . . it opens up his alibi witnesses to perjury charges, which he now has to address with them."[1] The prosecutor also told the court that the State was willing to extend a revised plea offer and that she understood that defense counsel wanted an opportunity to review the revised offer with Abbatiello and to discuss the anticipated testimony from the podmate with the defense alibi witnesses.

---

[1] App. to Opening Brief at A35-36.

Defense counsel agreed with the prosecutor's description of the state of play.

(12) The next day, defense counsel described his conversation with the witnesses as follows:

> I did share with the witnesses that the State advised me that if they were to testify as alibi witnesses, depending upon the outcome of the trial, that they would be, possibly, risking a perjury charge, because I believe it's the State's position that they are not being candid with their testimony.[2]

(13) Because Abbatiello did not object to this alleged prosecutorial misconduct at trial, we review it for plain error.[3] "In a plain error review of prosecutorial misconduct, we first review the record *de novo* to determine whether misconduct occurred. If we determine that no misconduct occurred, our analysis ends."[4] If we find misconduct, then "[u]nder the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[5] Plain error review is "limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[6]

---

[2] *Id.* at A38.
[3] Supr. Ct. R. 8; *Goddard v. State*, 382 A.2d 238, 242 (Del. 1977).
[4] *Torres v. State*, 979 A.2d 1087, 1094 (Del. 2009) (footnotes omitted).
[5] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[6] *Id.*

(14) In *Torres v. State*,[7] we applied the test announced by the Sixth Circuit Court of Appeals in *United States v. Pierce*,[8] to a claim similar to that raised by Abbatiello here. Under the *Pierce* test, a prosecutor's statements "must amount to a substantial interference with a witness's free and unhampered determination to testify before a due process violation will be found."[9] Here, the prosecutor's comments did not amount to "substantial interference" nor do they support an inference that they were intended "to coerce [Abbatiello's witnesses] into silence."[10] Rather, the State was merely notifying the trial court and defense counsel that it had its own witness whose testimony would contradict Abbatiello's alibi witnesses. If those alibi witnesses were to testify, they could perjure themselves and expose themselves to potential prosecution. "Where the prosecutor merely provides the witness with a truthful warning there is no constitutional violation."[11] The State's comment was a permissible warning. We therefore find no merit to Abbatiello's claim that the prosecutor's comments deprived him of due process.

(15) Next, Abbatiello argues that the prosecutor's improper comments during closing argument violated his right to a fair trial. Abbatiello did not object to these comments and therefore they, like the prosecutor's comments previously

---

[7] 979 A.2d at 1095.
[8] 62 F.3d 818, 832 (6th Cir. 1995).
[9] *Torres*, 979 A.2d at 1095.
[10] *See Pierce*, 62 F.3d at 832 (quoting *United States v. Smith*, 997 F.2d 674, 680 (10th Cir. 1993)).
[11] *United States v. Gardner*, 288 F.3d 878, 881 (7th Cir. 2001) (internal quotation marks omitted).

discussed, are reviewed under the plain-error standard.

(16) First, Abbatiello argues that the prosecutor improperly interjected her personal opinion into her closing argument when she argued that "the surveillance video shows it was the defendant."[12] As we stated in *Kirkley v. State*:

> This Court has consistently reaffirmed that the prosecutor is allowed to argue all legitimate inferences of the defendant's guilt that follow from the evidence. The inferences, however, must flow from the evidence presented. Conceptually, improper vouching occurs when the prosecutor implies personal superior knowledge, beyond what is logically inferred from the evidence at trial.[13]

(17) Here, the prosecutor merely argued what could be inferred from the surveillance video and Weston's description of the robber—that the individual in the surveillance was the man Weston identified as the robber. The prosecutor's statement did not imply superior knowledge. She argued an inference that could be logically inferred from the evidence presented at trial.[14] Therefore, we find that this comment was not improper.

(18) Second, Abbatiello argues that the prosecutor improperly vouched for the credibility of Abbatiello's podmate when she stated in closing argument that "he [the podmate] told the truth about what the defendant told him."[15] This last

---

[12] App. to Answering Br. at B144.
[13] 41 A.3d 372, 377 (Del. 2012) (internal citations omitted).
[14] *See Daniels v. State*, 859 A.2d 1008, 1012 (Del. 2004) ("[B]oth sides [are] free to argue the inferences which could be drawn by the jury from the evidence.").
[15] App. to Answering Br. at B148.

7

comment, Abbatiello argues, was improper because it "directly implicated the credibility of a witness who provided critical evidence in the prosecution [*sic*] case."[16] Abbatiello argues that this comment deprived him of a fair trial because his podmate's credibility was a central component to the State's case.

(19) The State concedes that its "presentation regarding [Abbatiello's podmate] was admittedly inartful."[17] We agree. It is difficult to distinguish the statement that the podmate "told the truth about what [Abbatiello] told him" from the prosecutor's statements in *Whittle v. State*,[18] in which we held that a prosecutor's repetitive description of witnesses' testimony as "right" constituted improper vouching for the credibility of those witnesses.

(20) But *Whittle* involved repetitive vouching; indeed, the Court found that "a broader, overarching theme of improper vouching . . . permeated the prosecutor's entire closing argument."[19] This is not the case here. Abbatiello has complained of only one isolated comment that was arguably a logical and proper inference drawn from the evidence.

(21) Even conceding *arguendo* that the isolated comment was improper, we do not find plain error under *Wainwright*. Improper vouching is more likely to be

---

[16] Opening Br. at 18.
[17] Answering Br. at 36.
[18] 77 A.3d 239 (Del. 2013).
[19] *Id.* at 247.

plain error where witness credibility is central in a "close case" and where the error is so egregious that the trial judge should have intervened *sua sponte*.[20] The mere facts that Abbatiello took the stand, denied guilt, and put on alibi witnesses do not, in and of themselves, make this a close case. There was sufficient evidence, independent of the podmate's account of Abbatiello's jailhouse admissions, to link Abbatiello to the robbery: eyewitness testimony from Weston and others at the motel corroborated the surveillance video; Weston selected Abbatiello from the police lineup; phone records demonstrated that Abbatiello had contacted Bryant the day of the robbery, and vehicle records supported the conclusion that Bryant's Mercedes was the getaway vehicle; when the police arrived at his residence to conduct a search, Abbatiello fled—conduct typically associated with a consciousness of guilt; and clothing seized from Abbatiello's residence was consistent with Weston's description of the robber and the surveillance video. The podmate's testimony was merely corroborative of this evidence. As such, the prosecutor's comment that the podmate "told the truth about what the defendant told him" was not "so clearly prejudicial to substantial rights" to constitute reversible error, nor was it a repetitive

---

[20] *Clayton v. State*, 765 A.2d 940, 944 (Del. 2001). *See also Baker*, 906 A.2d 139, 151 (Del. 2006). *Baker* abandoned the notion that plain error exists only where "defense counsel's failure to object is so inexcusable, that a trial judge, in the interest of fundamental fairness, has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction." The Court noted that this "*sua sponte* intervention standard" is essentially an unnecessary gloss on the *Wainwright* standard.

error that cast doubt on the integrity of the judicial process.[21]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:


/s/ Gary F. Traynor
Justice

---

[21] *See Baker*, 906 A.2d at 150 (In our review of prosecutorial-misconduct claims, "if we conclude that the misconduct would not warrant reversal under the *Wainwright* [plain-error] standard, we proceed to apply *Hunter* as the third analytical step and consider whether the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.") (citing *Hunter v. State*, 815 A.2d 730 (Del. 2002)).