IN THE SUPREME COURT OF THE STATE OF DELAWARE

DAVID ELDER, §
§
Defendant Below, § No. 359, 2023
Appellant, §
§ Court Below: Superior Court
v. § of the State of Delaware,
§
STATE OF DELAWARE, § Cr. ID No. 1512017983 (S)
§
Appellee. §

Submitted: July 26, 2024
Decided: October 7, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## **ORDER**

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, David Elder, filed this appeal from a Superior Court opinion denying his first motion for postconviction relief under Superior Court Criminal Rule 61.[1]  For the reasons discussed below, we affirm the Superior Court's judgment.

(2)    In December 2015, Elder was arrested for raping his 78-year-old mother-in-law.  Elder told police in a post-arrest interview that he had consensual

---

[1] *State v. Elder*, 2023 WL 6051126 (Del. Super. Ct. Sept. 13, 2023).

sexual contact with the victim. A grand jury charged Elder with first-degree rape, second-degree rape, first-degree burglary, and wearing a disguise during the commission a felony.

(3) After his first trial resulted in a hung jury, a second Superior Court jury found Elder guilty of first-degree rape, second-degree rape, first-degree burglary, and wearing a disguise during the commission a felony. The Superior Court granted the State's motion to sentence Elder as a habitual offender under 11 *Del. C.* § 4214(a) for the rape and burglary convictions, but denied the motion as to the disguise conviction. The Superior Court sentenced Elder to life imprisonment for first-degree rape, second-degree rape, and first-degree burglary, plus five years of Level V incarceration, suspended for Level IV home confinement for first-degree burglary.

(4) After this Court affirmed the Superior Court's judgment on appeal,[2] Elder filed a timely motion for postconviction relief and a motion for appointment of counsel under Rule 61. The Superior Court granted Elder's motion for appointment of postconviction counsel ("Postconviction Counsel"). Notwithstanding the appointment of Postconviction Counsel, Elder continued to file documents with the court and asked that he be permitted to supplement

---

[2] *Elder v. State*, 2018 WL 6331619 (Del. Dec. 3, 2018) (affirming the Superior Court's denial of the defendant's request for a *Deberry* instruction based on the State's failure to preserve video from his home surveillance system).

2

Postconviction Counsel's claims with additional claims. The Superior Court granted Elder's request.

(5) On November 14, 2022, Elder filed his supplemental postconviction claims. Elder argued that his trial counsel was ineffective because he failed to: (i) move for a mistrial or argue on direct appeal that the trial judge was biased; (ii) move for a mistrial or argue on direct appeal that the State engaged in prosecutorial misconduct; (iii) cross-examine witnesses sufficiently; (iv) challenge the search warrant for his DNA; (v) challenge the admissibility of evidence seized from his house; (vi) question jurors sufficiently during *voir dire*; and (vii) raise cumulative error on appeal.

(6) On November 30, 2022, Postconviction Counsel filed an amended motion for postconviction relief. Postconviction Counsel argued that trial counsel was ineffective in: (i) arguing the motion *in limine* related to Elder's prison phone calls to his wife;[3] and (ii) failing to challenge the trial judge's response to a jury question concerning the first-degree burglary charge on appeal.

(7) On September 13, 2023, following the submission of trial counsel's response to the postconviction claims, the State's response, and the replies of Postconviction Counsel and Elder, the Superior Court denied the postconviction

---

[3] Elder and his wife were divorced and she had remarried by the time of his second trial, but for convenience we refer to her as Elder's wife.

3

motion. This appeal followed. The Court granted Elder's request to proceed *pro se* under Supreme Court Rule 26(d)(iii).

(8) We review the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[4] We review constitutional claims, including ineffective assistance claims, *de novo*.[5] The Court considers the procedural requirements of Rule 61 before addressing any substantive issues,[6] but claims of ineffective assistance raised in a timely postconviction motion generally are not procedurally barred.[7]

(9) Elder argues that the Superior Court erred in: (i) failing to consider his *pro se* reply and not conducting an independent review of his Rule 61 claims; and (ii) rejecting his ineffective assistance claims based on the trial judge's lack of impartiality, prosecutorial misconduct, the cross-examination of the sexual assault nurse examiner ("SANE Nurse"), the legality of the warrant for the collection of his DNA, the search of his house, and cumulative error. He has waived appellate review of ineffective assistance claims that he or his Postconviction Counsel made below, but that he has not raised on appeal.[8]

---

[4] *Baynum v. State*, 211 A.3d 1075, 1082 (Del. 2019).
[5] *Id*.
[6] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[7] *Cephas v. State*, 2022 WL 1552149, at *2 (Del. May 17, 2022) (citing *Green v. State*, 238 A.3d 160, 175 (Del. 2020)).
[8] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997). Accordingly, we do not consider the arguments made by Postconviction Counsel or Elder's *pro se* claims below that his trial counsel

4

(10) Although the Superior Court granted Elder's request to file supplemental postconviction claims, it is less clear whether Elder was permitted to file a *pro se* reply. The scheduling order refers to a reply by Elder or his Postconviction Counsel. Postconviction Counsel later requested an extension of the deadline for both her and Elder to file a reply, which the Superior Court granted. Given the lack of clarity concerning whether Elder was granted permission to file a *pro se* reply, we have considered the *pro se* reply he filed in the Superior Court. We reject Elder's argument that the Superior Court's acceptance of certain arguments made by the State and use of some of the same language as the State means that the Superior Court failed to conduct an independent review of his *pro se* claims. We are satisfied that the Superior Court conducted an independent review of Elder's claims.

(11) We turn to Elder's arguments regarding the Superior Court's denial of his ineffective assistance claims. To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that: (i) his counsel's representation fell below an objective standard of reasonableness; and (ii) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[9] There is "a strong presumption that counsel's conduct falls

---

failed to question prospective jurors sufficiently during *voir dire* and failed to cross-examine his wife effectively.

[9] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

5

within the wide range of reasonable professional assistance."[10]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[11]

(12)  Elder first argues that the Superior Court erred in finding that his trial counsel's failure to seek a mistrial or make an appellate argument based on the trial court judge's lack of impartiality was objectively reasonable.  To demonstrate the trial judge's lack of impartiality, Elder relies primarily on instances where the trial judge exercised his "wide discretion in regulating the conduct of trial, including 'the mode and order of interrogating witnesses and presenting evidence.'"[12]  Elder also claims that the trial judge displayed bias by telling the prosecutor how to counter the defense expert's testimony, what to argue to the jury, and how to impeach Elder's trial testimony.

(13)  We agree with the Superior Court that Elder failed to identify "any bias or prejudice on the part of the trial judge."[13]  Ruling against a party does not mean a judge is biased as Elder suggests.[14]  Nor does the record support Elder's claims of

---

[10] *Id.* at 689.

[11] *Id.* at 694.

[12] *Buckham v. State*, 185 A.3d 1, 9 (Del. 2018) (quoting D.R.E. 611(a)). These instances include the trial judge telling the prosecutor a repetitive question had been answered and to move on, directing Elder's trial counsel not to ask his expert witness leading questions, and instructing the defense expert and Elder to answer the questions asked.

[13] *Elder*, 2023 WL 6051126, at *10.

[14] *In re Abbott*, 308 A.3d 1139, 1178 (Del. Nov. 9, 2023) ("[R]uling against a party does not mean a hearing officer is biased or otherwise engaging in misconduct…."); *Gattis v. State*, 955 A.2d 1276, 1284 (Del. 2008) (recognizing that a judge's adverse rulings or critical remarks do not ordinarily support a bias or appearance of impropriety claim).

6

judicial coaching. In the absence of evidence that the trial judge was biased, Elder's trial counsel did not have a basis for seeking a mistrial due to judicial bias or raising judicial bias on direct appeal. The Superior Court did not err in holding that Elder failed to show his trial counsel acted unreasonably when he did not seek a mistrial or raise judicial bias on direct appeal.

(14) The Superior Court also did not err in holding that Elder failed to identify prosecutorial misconduct that his trial counsel should have challenged. The prosecution cannot intentionally "misstate the evidence or mislead the jury as to the inferences it may draw,"[15] but can argue "legitimate inferences that…flow from the evidence presented."[16] Given the initial testimony of Elder's wife that she was looking for the key to the victim's house during the 911 call to report the rape and did not see the key on the top of her purse, the prosecutor did not misstate the evidence in asking Elder's wife to clarify whether her discovery of the key at the bottom of her purse occurred during the 911 call or later. In arguing that the evidence, including the testimony of Elder's wife and the police officer with her when she discovered the key, showed that Elder took the key to the victim's house and then put it in his wife's purse when he returned home, the prosecutor argued legitimate inferences flowing from the evidence presented.

---

[15] *Hughes v. State*, 437 A.2d 559, 567 (Del. 1981).
[16] *Burns v. State*, 76 A.3d 780, 789 (Del. 2013).

(15)  Contrary to Elder's contention, the prosecutor did not improperly comment on his right to remain silent by asking him about differences between his post-*Miranda* statement to police and his trial testimony.  Elder's reliance on *Doyle v. Ohio*[17] to argue otherwise is unpersuasive.  In *Doyle*, the United States Supreme Court held that a prosecutor could not impeach a defendant who recounted an exculpatory story for the first time at trial by cross-examining the defendant about his post-arrest silence.[18]  As the United States Supreme Court explained in *Anderson v. Charles*:[19]

> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements.  Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.[20]

Elder did not exercise his right to remain silent after he was arrested and received *Miranda* warnings.  He chose to speak to police about his encounter with his mother-in-law and subsequent events.  By waiving his *Miranda* rights and testifying at trial, Elder could be cross-examined about prior inconsistent statements he made to the police.

---

[17] 426 U.S. 610 (1976).
[18] *Id.* at 618-19.
[19] 447 U.S. 404 (1980).
[20] *Id.* at 409.  *See also MacDonald v. State*, 816 A.2d 750, 754 (Del. 2003) (distinguishing *Doyle* and holding the State properly impeached the defendant's "credibility using his pre-arrest prior inconsistent statements, voluntarily given in spite of his *Miranda* rights).

(16)    In addition, the prosecutor did not commit misconduct by telling the jury that the defense expert had opined that redness on the victim's genitalia came from pressure applied by "an object, a finger, or a penis" [21] instead of "a penis or finger or foreign object" as the expert's report stated. [22]   Assuming the prosecutor did misrepresent one of the statements Elder made to his wife during a recorded phone call on cross-examination and that this constitutes prosecutorial misconduct as Elder claims,[23] this error was not "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process" and was not "part of a 'persistent pattern of prosecutorial misconduct.'"[24]

(17)    Finally, the prosecutor did not commit misconduct by telling the jury that Elder lied to the police about the ski mask the victim said he was wearing.  Elder told the police that he didn't know if he had the mask with him when he went to the victim's house and that the mask was inside his house.  At trial, Elder testified that he had the mask when he went to the victim's house, it fell out of his pocket when he was chatting with the victim, and he put it on and stuck out his tongue to amuse her.  He also testified that he hid the mask in a barbeque grill when he got home because he overheard his wife on the phone with 911 and panicked.  During his trial

---

[21] Reply Br. App. AR239.
[22] Op. Br. App. A203.
[23] Elder admits that he told his wife that her mother had to understand the sex was consensual, but disputes that he asked his wife to get her mother to say it was consensual.
[24] *Trala v. State*, 244 A.3d 989, 998 (Del. 2020) (quoting *Hunter v. State*, 815 A.2d 730, 737-38 (Del. 2002)).

9

testimony, Elder repeatedly described his statements to the police about the ski mask as lies.

(18) "[P]rosecutors may refer to statements or testimony as a 'lie' only (1) if one may legitimately infer from the evidence that the statement is a lie and (2) if the 'prosecutor relates his argument to specific evidence which tends to show that the testimony or statement is a lie.'"[25] In applying this analysis, the Superior Court correctly found that the prosecutor did not commit misconduct by describing what Elder told the police about the ski mask as lies.

(19) Elder next argues that the Superior Court should have found his trial counsel was ineffective for failing to cross-examine the sexual assault nurse examiner ("SANE Nurse") about her "exculpatory" testimony at the first trial.[26] He describes this testimony as the SANE Nurse not testifying that she observed injuries to the victim's genitalia until after she had used a speculum. The expert retained by the defense for the second trial opined that certain injuries identified by the SANE Nurse were most likely caused by the SANE Nurse's use of an unlubricated speculum on the elderly victim. At the second trial, the SANE Nurse testified that she had observed injuries to the victim's genitalia before and after using a speculum. If his trial counsel had cross-examined the SANE Nurse about her testimony at the

---

[25] *Clayton v. State*, 765 A.2d 940, 942 (Del. 2001) (quoting *Hughes v. State*, 437 A.2d 559, 571 (Del. 1981)).
[26] Op. Br. at 22.

first trial, Elder contends that the jury would have found him not guilty of the rape charges.

(20) The record does not support this claim. Based on the SANE Nurse's testimony at the first trial, the timing of her observation of certain injuries to the victim's genitalia in relation to her use of the speculum is unclear, not exculpatory as Elder contends. At the second trial, the prosecutor elicited clearer and more detailed testimony from the SANE Nurse about the female anatomy, injuries she observed to the victim's external genitalia before using a speculum, and injuries she observed to the victim's internal genitalia after using a speculum. This more detailed testimony was not evidence of fabrication by the SANE Nurse as Elder suggests. As the Superior Court recognized, it was the result of the prosecutor's efforts to avoid another hung jury (the first jury had asked questions about the meaning of sexual intercourse[27] and sexual penetration[28] in relation to parts of the female anatomy) and to counter the defense expert's opinion that injuries to the victim's genitalia were attributable to the SANE Nurse. Elder failed to show that his trial counsel was

---

[27] Sexual intercourse, an element of the first-degree rape charge, is defined as "[a]ny act of physical union of the genitalia or anus of 1 person with the mouth, anus or genitalia of another person. It occurs upon any penetration, however slight." 11 *Del. C.* § 761(g)(1) (in effect between September 2015 and July 22, 2019).

[28] Sexual penetration, an element of the second-degree rape charge, is defined as "[t]he unlawful placement of an object," which includes fingers, "inside the anus or vagina of another person." *Id.* § 761(d), (i)(1) (in effect between September 2015 and July 22, 2019).

11

objectively unreasonable for not cross-examining the SANE Nurse about her testimony at the first trial.

(21) Elder also failed to show a reasonable probability of a different outcome if his trial counsel had cross-examined the SANE Nurse about her testimony at the first trial. Even assuming Elder's trial counsel had elicited more testimony suggesting that all of the injuries to the victim's genitalia were caused by the SANE Nurse, there was other substantial evidence of first-degree rape[29] and second-degree rape.[30] This evidence included the victim's statement to police and her testimony, the presence of the victim's blood on her underwear before the SANE Nurse's examination, major bruising on the victim's leg, and Elder's admission to sexual contact with the victim. The Superior Court did not err in denying Elder's claim that his trial counsel was ineffective in cross-examining the SANE Nurse.

(22) Elder next contends that the Superior Court erred in finding that his counsel was not ineffective for failing to challenge the warrant for collection of his DNA. He claims that the probable cause affidavit for the warrant includes information from an interview with the victim that was not conducted until after the

---

[29] Elder was charged with first-degree rape under 11 *Del. C.* § 773(a)(1), which provides that a person is guilty of first-degree rape when he intentionally engages in sexual intercourse with another person without their consent and during the commission of the crime he causes physical injury or serious mental or emotional injury to the victim.

[30] Elder was charged with second-degree rape under 11 *Del. C.* § 772(a)(2)(b)(1), which provides that a person is guilty of second-degree rape when he intentionally engages in sexual penetration with another person without their consent that was facilitated or occurring the commission of first-degree burglary.

12

warrant was approved. At trial, the detective who prepared the affidavit testified that he did not speak to the victim until after obtaining the warrant for collection of Elder's DNA. He testified that it was possible he spoke to the SANE Nurse before preparing the affidavit and warrant.

(23) The State argues that the detective obtained the victim's description of the assault from another police officer, but Elder points out that this police officer testified that the victim said little to him other than her son-in-law had tried to have sex with her. In his affidavit, trial counsel stated that he had considered filing a motion to suppress the DNA results, but did not do so because Elder had told police he had consensual sexual contact with the victim so the presence of his DNA was not inculpatory. Trial counsel also stated that, with the benefit of hindsight and in light of the trial testimony, he should have a filed a motion to suppress.

(24) Even assuming that trial counsel's failure to file a motion to suppress the DNA search warrant was objectively unreasonable, we agree with the Superior Court that Elder failed to establish prejudice. Elder asserted from the beginning that he had consensual sexual contact with the victim. The presence of Elder's DNA on the victim was consistent with what he told the police and others. Elder failed to show that there is a reasonable probability the outcome would have been different had his trial counsel filed a successful motion to suppress the DNA evidence.

(25)   Elder also argues that his trial counsel was ineffective for failing to challenge the search of his residence.  During the search, police found a ski mask that the victim said Elder was wearing when he broke into her home.  Elder contends that the police did not have his wife's consent to enter or search the home.  The record does not support this claim.

(26)   Consent to a search can be express or implied.[31]  While the victim and Elder's wife were on the phone with 911 reporting the rape, Elder's wife saw that Elder had returned home and was scared.  She fled to the entrance of the trailer park where she met the police responding to the 911 call.  The police then went to the residence, ordered Elder to come out, and arrested him.  One police officer stayed with Elder while the other officer went with Elder's wife, who was upset, into the home.  Elder's wife, with the assistance of the police officer and other police officers who came to the residence, looked for the ski mask she had recently bought Elder as well as the key to the victim's house.  The mask was found stuffed in a barbeque grill outside the front door.

(27)   Elder's trial counsel filed a motion to suppress evidence found during the search of the Elders' home.  He argued that the search was conducted without a warrant or the consent of any occupant of the home. The State opposed the motion, arguing that Elder's wife had consented to the police searching the home and signed

---

[31] *Cooke v. State*, 977 A.2d 803, 855 (Del. 2009).

14

a consent form before the police seized the mask. The signed consent form was included with the motion.

(28) A hearing on the motion to suppress was scheduled for February 9, 2017. At an office conference the day before, Elder's counsel advised the Superior Court that he did not have a legible copy of the signed consent form when he filed the motion to suppress and needed to determine whether there was still a legal basis for the motion. He indicated that Elder's wife did not recall signing the consent form. After Elder's wife failed to appear for the suppression hearing, the Superior Court denied the suppression motion, finding that there was no basis to question whether Elder's wife had signed the consent form. The Superior Court did not err in determining that Elder failed to show his counsel was ineffective in challenging the search of the house. Given the implied and express consent of Elder's wife to the search, Elder's trial counsel had no basis to argue successfully that the search was non-consensual.

(29) Finally, Elder argues that the Superior Court erred in rejecting his claim that his trial counsel was ineffective for failing to argue cumulative error at trial or on direct appeal. "Cumulative error must derive from multiple errors that caused 'actual prejudice.'"[32] Because the Court has found no errors that caused actual

---

[32] *Michaels v. State*, 970 A.2d 223, 231 (Del. 2009) (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)).

prejudice, Elder's claim of cumulative error also fails. For all the foregoing reasons, the Superior Court did not err in denying Elder's *pro se* claims for postconviction relief.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

16